FILED
2022 Jan-20  PM 01:52
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| KATHERINE LEE CANNON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | 7:19-cv-08006-LSC |
| | ) | 7:17-cr-00182-LSC-HNJ |
| | ) | |
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OF OPINION**

## I.   Introduction

Pursuant to 28 U.S.C. §2255, Katherine Lee Cannon ("Cannon" or "Petitioner"), has filed with the Clerk of this Court, a motion to vacate, set aside, or correct her sentence of 168 months. (Doc. 1.) The Government has responded in opposition to the motion. (Doc. 5.) For the reasons set forth below, Cannon's § 2255 motion is due to be denied and this action dismissed without an evidentiary hearing.

## II.   Background

### A. Trial and Sentencing

Petitioner, Katherine Cannon, was charged in a multi-count and multi-defendant indictment filed on April 27, 2017. (Cr. Doc. 1.)[1] Cannon was charged with three counts: (1) conspiracy to possess with the intent to distribute, and to distribute, methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and (b)(1)(A); (2) possession with the intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A); and (3) use of a communications device to facilitate a drug crime in violation of 21 U.S.C. § 843(b). (*Id.*) Cannon entered a guilty plea on June 30, 2017. (Cr. Doc. 100.)

In the plea agreement, the Government agreed to dismiss Counts One and Forty-Three for conspiracy and use of a communication device to facilitate a drug crime, respectively. (Cr. Doc. 100 at 1.) In accordance with the plea agreement, the Government also recommended a sentence of 168 months, prior to any 5K1.1 departure. (Cr. Doc. 185 at 2.)

On January 25, 2018, judgement was entered, and the defendant was sentenced to a total term of 168 months as to count thirteen, as agreed upon by the defendant and government. (Cr. Doc. 186.) Cannon did not file a notice of appeal,

---

[1] "Cr. Doc." refers to an entry on the docket sheet in the underlying criminal case, No. 7:17-cr-00182-LSC-HNJ.

having voluntarily waived her appeal rights, with limited exceptions, in her plea agreement. (Cr. Doc. 100 at 9-10.)

On January 23, 2019, Cannon filed the present motion seeking to vacate or change an illegal sentence pursuant to 28 U.S.C. § 2255. (Doc. 1.)

Cannon currently remains in custody.

### B. § 2255 Proceedings

On January 23, 2019,[2] Cannon executed her § 2255 motion, entered by the Clerk on January 25, 2019[3]. Cannon asserts the following grounds upon which § 2255 relief should be granted, all of which are based on ineffective assistance of counsel:

1. Her counsel did not discuss the sentencing guidelines with her prior to signing her plea agreement, and she was coerced into pleading guilty. (Doc. 1 at 4.)

2. Her counsel never argued for a lesser sentence at her sentencing hearing. (Doc. 1 at 5.)

3. Her counsel advised her that she was facing a potential 30-year sentence, which she claims was misleading based on new developments in the law. (Doc. 1 at 6.)

---

[2] Petitioner wrote "January 23, 2018" as the date of execution on her § 2255 petition. Considering that this Court did not enter judgment against Ms. Cannon until January 25, 2018, and that the Clerk entered the motion on January 25, 2019, this Court finds that Ms. Cannon made the kind of scrivener's error that often occurs in the first weeks of a new year and construes the date of execution to be January 23, 2019.

[3] The Eleventh Circuit applies the "mailbox rule" to deem a prisoner's § 2255 motion to have been filed upon the "date that he delivered it to prison authorities for mailing, presumptively,… the day that he signed it." *Jones v. United States*, 304 F.3d 1035, 1038 n.7 (11th Cir. 2002) (per curiam).

(Doc. 1.) For the reasons outlined below, the Court finds that all of these claims are without merit and due to be denied without an evidentiary hearing.

## III.    Timeliness

Judgment was entered against Cannon on January 25, 2018. (Cr. Doc. 186.) Cannon did not appeal, and therefore, her conviction became final at "the conclusion of direct review or the expiration of the time for seeking such review." *Kaufmann v. United States*, 282 F.3d 1336, 1339 (11th Cir. 2002) (quoting *Baskin v. United States*, 998 F. Supp. 188, 189 (D. Conn. 1998). Cannon signed her § 2255 petition on January 23, 2019. (Doc. 1.) Because Cannon filed her § 2255 motion within one year of the date that the judgment of her conviction became final, the motion is timely. *See* 28 U.S.C. § 2255(f)(1).

Cannon is bringing her first § 2255 motion, so it is not "second or successive" within the meaning of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See id.* at §§ 2255(h), 2244(b)(3)(A).

## IV.    Standard of Review

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to 28 U.S.C. § 2255 are limited. A petitioner is entitled to relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction,

(3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (quoting *Richards v. United States*, 837 F.2d 965, 966 (11th Cir. 1988)).

In litigation stemming from a § 2255 motion, "[a] hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where the [movant's] allegations are affirmatively contradicted by the record." *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (quoting *Guerra v. United States*, 588 F.2d 519, 520-21 (5th Cir. 1979)). However, it is appropriate for the court to conduct an evidentiary hearing if, "accept[ing] all of the [movant's] alleged facts as true," the movant has "allege[d] facts which, if proven, would entitle him to relief." *Diaz v. United States*, 930 F.2d 832, 834 (11th Cir. 1991) (quoting *Agan v. Dugger*, 835 F.2d 1337, 1338 (11th Cir. 1987) and *Futch v. Dugger*, 874 F.2d 1483, 1485 (11th Cir. 1989)).

## V.    Discussion

### A. Ineffective Assistance of Counsel

Cannon asserts three grounds of ineffective assistance of trial counsel in her §
2255 motion.  Because these assertions are meritless, they will be dismissed without
an evidentiary hearing.

 Claims of ineffective assistance of counsel may be raised for the first time in
a § 2255 motion and are therefore not subject to procedural bar for failing to raise
them on direct appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2003). An
ineffective assistance of counsel claim has two components: first, the petitioner
"must show that the counsel's performance was deficient;" second, the petitioner
"must show that the deficient performance prejudiced the defense." *Strickland v.
Washington*, 466 U.S. 668, 687 (1984). To satisfy the first component, "the
defendant must show that counsel's representation fell below an objective standard
of reasonableness." *Id.* at 688. The second component is satisfied only when the
defendant shows that "there is a reasonable probability that, but for counsel's
unprofessional errors, the result of the proceeding would have been different." *Id.* at
694.

In examining counsel's performance, the Court should be "highly
deferential." *Id.* at 689. The Court must make "every effort . . . to eliminate the

distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* The Court must also "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*; *see Bell v. Cone*, 535 U.S. 685, 702 (2002) (holding that "tactical decision[s] about which competent lawyers might disagree" do not qualify as objectively unreasonable). A petitioner who seeks to overcome this presumption does not carry his burden by offering bare accusations and complaints, but rather "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690.

Where a petitioner fails to show that his counsel's performance fell below an objective standard of reasonableness, the court need not address the issue of prejudice. *See Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000). Where the court does consider this prong, the petitioner must show that counsel's errors were prejudicial and "deprive[d] the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. This burden is met by establishing by a reasonable probability that the outcome of the proceeding would have been different but for counsel's errors. *Williams v. Threatt*, 529 U.S. 362, 391–93 (2000); *Strickland*, 466 U.S. at 691.

To establish prejudice in the context of a guilty plea, a movant must establish that, but for his counsel's unprofessional errors, "he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 53, 59 (1985). In the guilty plea context, there is a strong presumption that an attorney's actions are reasonable: "We recognize that in deciding whether to enter a plea, defense lawyers carefully balance both 'opportunities and risks' without fully knowing the strength of the State's case. Therefore, we must, as we do for all *Strickland* claims, afford 'substantial deference' to a lawyer's strategic choices." *Arvelo v. Sec'y, Fla. Dep't of Corr.*, 788 F.3d 1345, 1348–49 (11th Cir. 2015) (citing *Premo v. Moore*, 562 U.S. 115, 124 (2011)). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690–91. The defendant must show "that no competent counsel would have taken the action that his counsel did take." *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc).

      **1. Cannon's claim of ineffective assistance of counsel on the basis that she entered into the plea agreement involuntarily is without merit.**

Cannon's first claim is that she entered the plea agreement involuntarily because her attorney did not discuss the sentencing guidelines with her prior to signing the agreement. Her claim is contrary to statements she made under oath at her plea hearing. (Cr. Doc. 224.)

There is a strong presumption that the statements made during a plea colloquy are true. *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994). There is no reason that the strong presumption can be overcome by Cannon in this matter. Cannon claims that her attorney coerced her into accepting the plea offer by the Government by failing to discuss the sentencing guidelines that would apply to her if she did not take the guilty plea. (Doc. 1 at 4.) She further alleges that counsel only told her that her criminal history qualified her as a career offender and that she would be sentenced as such if she did not accept the plea offer. (*Id.*) These assertions are not supported by the record. At the plea hearing, the Court asked Cannon many questions on the record about her attorney. While under oath, Cannon expressed her satisfaction with Mr. Neff and Mr. Bloomston's representation:

| THE COURT: | Have you been able to read the documents you have encountered in this case? |
|---|---|
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | Like for instance, there is a document called Guilty Plea Advice of Rights Certification; it appears to have your initials going down one |

|                    | side of each page. Your lawyer's showing you a copy of it. |
|                    | Did you read that document? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | Did you understand what was in it? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | Did your lawyer go over it with you as well? |
| THE DEFENDANT: | Yes, he did. |
| THE COURT: | Let's talk about your lawyer; he is sitting right there with you -- Mr. Neff. How has he done as far as an attorney goes? |
| THE DEFENDANT: | He has done great. |
| THE COURT: | Do you have any complaints about his representation of you? |
| THE DEFENDANT: | No, sir. |

(Cr. Doc. 224 at 4-5).

Ms. Cannon was further questioned by the Court concerning any determination by her attorney of the sentencing guidelines. The Court explained the possibility that her attorneys' calculation of her guideline range might be correct or incorrect, but the Court also informed her of the sentencing range required by statute.

THE COURT:            There is two ranges of punishment we are going to talk about; one is the statutory range the other is the sentencing guideline range. The sentencing guidelines range is advisory. It's to help me determine an appropriate sentence to give you.

                      I assume your lawyer has told you what he thinks that will end up being. Has he done that?

THE DEFENDANT:        Yes, Sir.

THE COURT:            He could have it right; then again, he may not. Nobody can tell you for sure what your guideline range will end up being until we have your sentencing hearing. Okay?

THE DEFENDANT:        Yes, sir.

THE COURT:            But I can tell you your statutory range of punishment.

                      Your statutory range of punishment for violating this statute as you are alleged to have violated it with regard to count 13, you are subject to in-custody imprisonment of not less than ten years, no more than your lifetime; a fine range of not more than ten million dollars; a supervised release term following your imprisonment of not less than five years; assessment fee of $100; community restitution applies; the sentencing guidelines apply; and there is no probation or suspension of your sentence possible.

> Further, this is a felony and, as such, may
> deprive you of valuable civil rights such as the
> right to vote, hold public office, serve on a
> jury, or possess any kind of firearm.
>
> Do you have any questions about that?

DEFENDANT:          No, Sir.

(Cr. Doc. 224 at 9-10.) Later, the Court specifically questioned Ms. Cannon

as to whether she had been coerced into pleading guilty:

> THE COURT:          Has anybody threatened you, forced you, or
>                     coerced you to get you to plead guilty?
>
> THE DEFENDANT:      No, sir.

(*Id.* at 13.)

Furthermore, both of her attorneys provided affidavits affirming their efforts

to inform Ms. Cannon of what to expect at sentencing based on her criminal history

and the charges she was facing. (Docs. 5-1 and 5-2.) Mr. Neff's statement asserted:

> Defendant entered into a binding plea agreement of 168 months. She
> was not threatened or coursed [sic] into entering this agreement. In fact
> she signed a 15 page plea agreement, and participated in a plea colloquy
> in front [sic] the Honorable L. Scott Coogler which lasted about 35
> minutes whereby she had ever [sic] opportunity to acknowledge if any
> of the aforementioned had occurred. At no time did she express any
> reservations to enter her plea nor did she voice and [sic] dissatisfaction
> with the services that were provided or the deal that was reached
> months in advance.

12

(Doc. 5-1 at 2.) Mr. Bloomston also attested to the advice given to Ms. Cannon before

she entered the plea agreement:

> Mr. Neff and I were very clear with Ms. Cannon about the potential
> sentence that she was facing. We remained transparent throughout our
> representation of Cannon as to what her expectations should be with
> the upcoming court proceedings. We both remained available at all
> times to address any questions or concerns that she had regarding her
> cases.

(Doc. 5-2 at 2.) He went on to add:

> Based on the enhancements due to her prior criminal history, Mr. Neff
> and I advised Cannon of the potential of a far greater sentence if
> convicted at a trial. Cannon reviewed and signed the Plea Agreement
> without any coercion and appeared to fully understand the terms of the
> agreement, in fact, she appeared before Judge Coogler to address the
> Court regarding her actions and remorse thereof at the Consent
> Docket/Plea Hearing.
>     On January 24, 2018 Cannon appeared for sentencing before
> Judge Scott Coogler in the Tuscaloosa Federal Courthouse. Offering no
> objection to the Presentence Investigation Report, at no point did
> Cannon mention her lack of understanding of the terms of the Plea
> Agreement nor her dissatisfaction with her legal representation.

(*Id.*)

Lastly, Cannon initialed on every line of the Court's Guilty Plea Advice of

Rights Form, acknowledging her understanding of her rights. (Cr. Doc. 99.) Ms.

Cannon's attorney also signed the form, certifying that he had "discussed with the

defendant, in detail, each of the matters set out [in the Advice of Rights form]." (*Id.*)

In her reply, Cannon attempts to tie her attorneys' failure to file a suppression motion based on an illegal search and seizure to her involuntary guilty plea. (Doc. 9 at 1-2.) Because this allegation was raised for the first time in her reply brief, which was signed by Ms. Cannon on May 24, 2019, (doc. 9 at 4), it is barred as untimely.

The sworn statements by Ms. Cannon at her Plea Hearing, coupled with the affidavits of her attorneys and her written acknowledgement that she had been advised by counsel of her rights, satisfy this Court that Ms. Cannon was properly advised of her options, the implications for her sentencing, and her right to plead not guilty and proceed to trial. Nothing in the record indicates that Ms. Cannon was coerced into accepting the plea agreement, and the Court finds no merit in her allegation that she made her guilty plea involuntarily. Accordingly, her first claim of ineffective assistance of counsel is due to be denied.

### 2. Cannon's claim that her attorney did not argue for a lesser sentence at her sentencing hearing is without merit.

Cannon claims that her counsel was ineffective for failing to argue for a lesser sentence than set forth in her plea agreement at her sentencing hearing. (Doc. 1 at 5.) This claim also fails because Ms. Cannon cannot show that her attorneys' conduct fell below the standard of reasonableness set forth in *Strickland*. Nor can she show actual prejudice concerning this claim.

An unsuccessful strategy at sentencing is insufficient to show ineffective assistance of counsel if the strategy was reasonable. *See Chandler v. United States*, 218 F.3d 1305, 1320-1326 (11th Cir. 2000). The issue of the reasonableness of the sentence was a calculated decision by the defense that the recommendation by the Government would prevent Petitioner from receiving a higher sentence based on her criminal history and the additional charges that were dropped in accordance with the plea agreement.

The Pre-Sentence Investigation Report indicated that Ms. Cannon's statutory minimum of ten years superseded the shorter guideline range of 87 to 108 months. (Cr. Doc. 184 at 45.) Ms. Cannon was sentenced, pursuant to the plea agreement, to 168 months or 14 years. (Cr. Docs. 100 at 8; 186 at 2.) The maximum penalty for violating 21 U.S.C. § 841(a)(1) was life imprisonment. 21 U.S.C. § 841(b)(1)(A).

While it is conceivable that Ms. Cannon might have received a lesser sentence if her attorney had argued for one as she suggested, it is also possible that the Court could have sentenced her to a far greater term of imprisonment. It is not unreasonable for trial counsel to make the strategic decision to abide by the plea agreement in an effort to avoid risking a greater sentence, especially considering the plea agreement included a provision to drop the other two counts against Ms. Cannon. Count One carried the same statutory range as Count Thirteen: ten years

to life imprisonment. 21 U.S.C. § 841(b)(1)(A). Count Forty-Three carried a statutory maximum of four years imprisonment. 21 U.S.C. § 843.

Ms. Cannon's plea agreement specifically acknowledged that "it is the Court's duty to impose sentence upon the defendant and that any sentence recommended by the government is **NOT BINDING UPON THE COURT**, and that the Court need not accept the government's recommendation." (Cr. Doc. 100 at 11.) Furthermore, the agreement also included as a condition of the Government's sentencing recommendation of 14 years that "the defendant agrees with the government that the 14 year sentence [is] a reasonable term of imprisonment and will not request a lesser term of imprisonment." (*Id.* at 8.) If Ms. Cannon's lawyers had requested a lesser sentence, that could have been considered a violation of Ms. Cannon's obligations under the agreement, and the Government possibly could have argued for a much longer sentence.

Ms. Cannon cannot show that counsel's strategic calculation not to argue for a lesser sentence was unreasonable. Nor can Ms. Cannon show prejudice because it is not clear that counsel's failure to argue this point resulted in a longer sentence. Therefore, this claim by Ms. Cannon is due to be denied.

### 3. Cannon's claim that her attorney gave her misleading advice concerning a potential 30-year sentence is without merit.

Ms. Cannon argues that under new (unspecified) laws, her criminal history no longer characterizes her as a career offender, and she would have received a lesser sentence if her attorney had not given her "misleading advice." (Doc. 1 at 6.) Cannon claims that her attorneys misled her when they advised her that she would face a 30-year sentence, based on her two prior felony convictions. (*Id.*) As previously noted, both of her attorneys submitted affidavits concerning the advice they gave Ms. Cannon as to the length of sentence she might receive if convicted. Mr. Neff stated:

> In the event that Mrs. Cannon had chosen not to fulfill her cooperation with the U.S. Government, and the DEA then she would be facing an enhancement under §21 U.S.C. 851. This enhancement that based on my experience and discussion with the U.S. Attorney would have required a LIFE sentence. As council I do not specifically recall telling Mrs. Cannon 30 years since the Mandatory Minimum would have been a LIFE sentence. I do not record the conversations, but I do know with a §851 enhancement she would not have been eligible for the binding 14 year agreement which she agreed to and received.

(Doc. 5-1 at 2.) Mr. Bloomston also recalled the potential for a life sentence being a point of concern in advising Ms. Cannon about her expectations if convicted: "Because of her prior convictions and a pending probation revocation from the State of Texas Cannon was facing a Life Sentence on her Federal charges." (Doc. 5-2 at 2.)

Furthermore, as discussed above, Cannon was advised by the Court of the statutory range of punishment that was possible, including a maximum penalty of life imprisonment. (Cr. Doc. 224 at 10.) Ms. Cannon cannot show that her attorneys failed to act reasonably in cautioning her about the potential sentence she was facing due to her criminal history. Nor can she establish prejudice.

While Ms. Cannon does not specify which new laws would change her status as a career offender, the Court will assume that Ms. Cannon was referring to the passage of the First Step Act. As the Eleventh Circuit explained in *United States v. Pubien*, 805 Fed. Appx. 727, 730 (11th Cir. 2020), § 401 of the First Step Act "chang[ed] the mandatory penalties [21 U.S.C. § 841(b)(1)(A)] imposed for repeat offenders [and] alter[ed] the types of offenses that trigger those penalties." Before the change, "a prior conviction for a felony drug offense" led to the increase in the statutory minimum, but after the First Step Act, only "a prior conviction for a serious drug felony or serious violent felony" produced that result. First Step Act of 2018, Pub. L. No. 115-391, § 401(a)(1), 132 Stat. 5194, 5220. The First Step Act also amended the mandatory minimum for two prior qualifying convictions from life imprisonment to 25 years. *Id.* at § 401(a)(2)(ii).

The First Step Act, however, did not make these changes retroactively applicable to defendants who had already been sentenced when it went into effect.

*Pubien*, 805 Fed. Appx. At 730. Instead, Congress stated, "This section, and the amendments made by this section, shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment." First Step Act of 2018, Pub. L. No. 115-391, § 401(c), 132 Stat. 5194, 5221. The First Step Act went into effect on December 21, 2018. First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. Ms. Cannon was sentenced nearly 11 months earlier on January 25, 2018. (Cr. Doc. 181.) Accordingly, the effects of the First Step Act do not apply in Ms. Cannon's case.

For all of the above reasons, Ms. Cannon's final claim is without merit and due to be denied.

## VI.    Conclusion

For the foregoing reasons, Cannon's § 2255 motion to vacate, set aside, or correct a sentence is due to be denied and this case dismissed with prejudice.

Rule 11 of the Rules governing § 2255 Proceedings requires the Court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. *See* Rule 11, Rules Governing § 2255 Proceedings. This Court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). To make such a showing, a "petitioner must demonstrate that a reasonable jurist would find the

district court's assessment of the constitutional debatable and wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), or that "the issues presented were adequate to deserve to proceed further." *Miller-EL v. Cockrell, 537 U.S. 322, 336 (2003) (internal quotations omitted).* This Court finds that Davis' claims do not satisfy either standard.

A separate order consistent with this opinion will be entered.

**DONE** and **ORDERED** on January 20, 2022.

L. Scott Coogler
United States District Judge

206728

20